IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARLIN BAER,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SALT LAKE CITY CORPORATION, et al.,<br><br>　　　　Defendants. | **REPORT AND RECOMMENDATION**<br><br>Case No. 2:13-cv-336-CW-PMW<br><br>**District Judge Clark Waddoups**<br><br>**Magistrate Judge Paul M. Warner** |

　　　　District Judge Clark Waddoups referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1]  Before the court are the following motions:  (1) Marlin Baer's ("Plaintiff") motion for partial summary judgment;[2] and (2) Salt Lake County and Officer Jeffrey Stegall's (collectively, "County Defendants") motion for summary judgment.[3]  On August 9, 2016, the court held a hearing on the motions.  At the hearing, Plaintiff was present and represented himself.  County Defendants were represented by Darcy Goddard.  Before the hearing, the court carefully considered the motions, memoranda, and other materials submitted by the parties.  The court made its findings and recommendation at the hearing.  This Report and Recommendation memorializes those findings and recommendation.

---

[1] *See* docket no. 2.

[2] *See* docket no. 104.

[3] *See* docket no. 209.

**FACTUAL BACKGROUND**

In general, this case arises out of a criminal citation issued to Plaintiff on May 16, 2009, and his subsequent arrest on June 7, 2009, on a bench warrant for failure to appear at his arraignment. Plaintiff alleges that he was issued a citation from the Salt Lake City Corporation Department of Airports on May 16, 2009, while outside the Utah State Capitol building. Salt Lake City Justice Court records indicate that Plaintiff was cited on that day for four Class B Misdemeanors pertaining to his failure to meet inspection and insurance requirements for his commercial ground transportation vehicle.

Plaintiff alleges that he contacted the Salt Lake City Justice Court five days after the citation was issued and was told that the citation was not in the Salt Lake City Justice Court system. Plaintiff allegedly called the court again each day until the fourteenth day after the citation was issued, and was told that the citation was still not in the system. The citation was docketed with the Salt Lake City Justice Court on May 27, 2009, and an arraignment was set before Judge Virginia Ward on June 1, 2009. The Salt Lake City Justice Court docket shows that Plaintiff contacted the court on the morning of June 1, 2009, and that he was instructed to be to the court by 8:00 a.m. to see Judge Ward. Plaintiff alleges that he contacted the Salt Lake City Justice Court on June 4, 2009, and was informed that his failure to appear has resulted in the issuance of a warrant. Plaintiff claims that he appeared at the Salt Lake City Justice Court at 8:30 a.m. on June 5, 2009, and was not allowed to meet with the judge. On the same day, a bench warrant was ordered for Plaintiff based on his failure to appear at his June 1, 2009 arraignment.

On June 7, 2009, Plaintiff was arrested by a Salt Lake City Airport Police Officer during a random identification inspection in the taxi and limousine parking lot at the Salt Lake City International Airport. Plaintiff was handcuffed, searched, and transported to the Salt Lake

County Adult Detention Center ("ADC"). Plaintiff alleges that County Defendants handcuffed Plaintiff to a metal bar; County Defendants fingerprinted and photographed him without his consent; County Defendants failed to provide Plaintiff a copy of the bench warrant, which was issued by Judge Ward, "a known convicted drug addict;"[4] Officer Stegall conducted a body search and "molested Plaintiff by touching his naked body to include his butt and then in his butt hole and touched his penis and testacies [sic] while [a] female [officer] was present;"[5] County Defendants refused to provide Officer Stegall's "full written report on the body search and detainment" to Plaintiff;[6] County Defendants refused to disclose the name of the female officer who assisted Officer Stegall; and County Defendants refused to provide Plaintiff with food to ease the shakiness from his diabetes.

During the booking process, Plaintiff informed the ADC nursing staff that he was diabetic and was taking "HTN meds" to treat that condition.[7] His initial glucose reading, taken at or around 5:30 p.m., was 189. Plaintiff's glucose levels were checked by nursing staff again at or around 7:40 p.m. and registered at 112. In his deposition, Plaintiff testified that his treating physician "likes to see" Plaintiff's blood sugar levels at "105 to 115," but his levels tend to be "anywhere from 115, 140."[8]

---

[4] Docket no. 140 at 9.

[5] Docket no. 1 at 10.

[6] Docket no. 140 at 10.

[7] Docket no. 209, Exhibit 6.

[8] Docket no. 211, Exhibit 3 at 96.

According to business records maintained in the ordinary course by the ADC, Plaintiff was brought into the ADC at 5:10 p.m. on June 7, 2009; was booked into the ADC at 6:12 p.m. on June 7, 2009; and was released from the ADC at 9:21 p.m. on June 7, 2009; thus, the total time of Plaintiff's detention on June 7, 2009, was approximately four hours and 26 minutes, i.e., from 4:55 p.m. until 9:21 p.m., four hours and 11 minutes of which were spent in the custody of the ADC.[9]

Plaintiff called the ADC on June 8, 2009, to complain of his treatment during the previous day's approximately four-hour-long detention.  Specifically, Plaintiff complained that (1) his First Amendment rights were violated when he was required to remove his outer shirt, thereby exposing his religious garments, during the "pat down" or "rub" search; (2) he was not given "a banana, orange, or pop" for his diabetes; and (3) the "officers were not professional" because "on two occasions they told him to sit down and shut up because he was going to get out soon."[10]  Plaintiff also indicated his doctor prefers his blood sugar levels to be around "97 to 115."[11]  Plaintiff, however, failed to allege he had been strip searched or body cavity searched (whether visually or digitally).

On June 12, 2009, Plaintiff called the ADC again.  He complained that he received inadequate medical care relating to his diabetes and that his First Amendment rights were violated when he was required to remove his outer shirt, thereby exposing his religious garments,

---

[9] *See* docket no. 211, Exhibit 4.

[10] Docket no. 209, Exhibit 6 at 6.

[11] *Id.*, Exhibit 3 at 7.

during the "pat down" or "rub" search.[12] Like the call on June 8, Plaintiff did not make any mention of a strip search or body cavity search.

Plaintiff contends that this detention and the actions by County Defendants while he was detained violated his rights under the First, Fourth, and Eighth Amendments to the Constitution. Plaintiff also alleges that County Defendants denied him his "substantive rights to life, liberty, and pursuit of happiness."[13] However, the crux of Plaintiff's complaint appears to be a violation of his civil rights pursuant to 42 U.S.C. § 1983. In addition, Plaintiff has alleged "pendant" causes of action under state law.

## STANDARD OF REVIEW

Under rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)). "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *J.V. v. Albuquerque Public Schs.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (quotations and citations omitted). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986).

---

[12] *Id.*

[13] Docket no. 1 at 13.

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007). "If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant." *Id.* (quotations and citation omitted). Furthermore, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (quotations and citation omitted).

Cross motions for summary judgment "are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979). Where cross motions overlap, the court may address the legal arguments together. *Berges v. Standard Ins. Co.*, 704 F.Supp.2d 1149, 1155 (D.Kan. 2010). With these standards in mind, the court turns to the parties' respective motions.

## **DISCUSSION**

Because the parties' have filed what are essentially cross motions for summary judgment, the court will address them together as to each of Plaintiff's claims, as well as County Defendants' affirmative defenses. Plaintiff sets forth the following causes of action in his

original complaint.[14] Plaintiff's First Cause of Action alleges that his "First Amendment right to freedom of expression and redress of grievance was denied by [County] Defendants when they incarcerated . . . Plaintiff without due process of law."[15] Plaintiff's Second Cause of Action alleges a violation of his "Fourth Amendment right to be secure in his house, papers, and effects from unreasonable or violent unprovoked attacks."[16] Plaintiff's Third Cause of Action alleges that he "suffered both physical and emotional cruel and unusual punishment in violation of the Eight [sic] Amendment by the unreasonable actions of [County] Defendants . . . by the unlawfulness [sic] detention, risk of life and restraint of Plaintiff."[17] Plaintiff's fourth cause of action alleges that his "substantive rights to life, liberty, and pursuit of happiness were denied by defendants when they organized and were allowed detain, molest, incarcerate [P]laintiff unlawfully."[18] Plaintiff also alleges "pendant" causes of action for "*Respondent Superior*" and violations of several provisions of the Utah Constitution.

### **First Amendment/Due Process Claim**

Based on Plaintiff's complaint and motion for partial summary judgment, it is unclear whether he intended to assert a First Amendment claim that County Defendants violated his right

---

[14] Plaintiff filed an amended complaint on July 19, 2013 (docket no. 28), that only amended the portion of his original complaint regarding the parties. The amended complaint did not alter the substance or claims of Plaintiff's original complaint (docket no. 1).

[15] Docket no. 1 at 12.

[16] *Id.*

[17] *Id.* at 13.

[18] *Id.*

to free speech and expression or whether he intended to assert that County Defendants violated his right to due process by detaining him at the ADC. As such, the court will address both issues.

Under the First Amendment, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. 1. To successfully establish that County Defendants violated his right to free speech and expression, Plaintiff must demonstrate that (1) he was "engaged in constitutionally protected activity," (2) County Defendants' actions caused him an "injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) County Defendants' "actions were substantially motivated as a response to his constitutionally protected conduct." *Nielander v. Board of County Com'rs of County of Republic, Kan.*, 582 F.3d 1155, 1165 (10th Cir. 2009).

Plaintiff has not set forth the particular protected free speech activity with which he was engaged or the actions that County Defendants took to chill Plaintiff's protected First Amendment activity. In addition, Plaintiff has failed to demonstrate that County Defendants' actions were motivated on the basis of Plaintiff's purported speech. "A plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient to create a genuine issue of fact." *Id.* Plaintiff has failed to adequately set forth such a claim, let alone offer any proof of record to support such a claim. Thus, Plaintiff has failed to state or support a First Amendment claim.

Plaintiff's purported due process claim likewise fails as a matter of law. In general, "a plaintiff who claims that the government has unconstitutionally imprisoned him has at least two

potential constitutional claims." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). A false imprisonment claim occurs when a plaintiff is detained *without* legal process; a malicious prosecution claim occurs when a plaintiff is detained *with* legal process. *See Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir. 2013). Here, Plaintiff was arrested pursuant to a facially valid warrant, and Plaintiff acknowledged as much in his deposition.[19] Thus, because the warrant was valid when Plaintiff was arrested, his allegations of unlawful detention are construed as a Fourth Amendment malicious prosecution claim. *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) ("Plaintiffs' detention was thus preceded by the institution of legal process, triggering the malicious prosecution cause of action.").

To state a claim for malicious prosecution, Plaintiff must allege that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Id.* To be entitled to summary judgment on a malicious prosecution claim, Plaintiff must provide proof to support each element of this claim and establish that that there are no genuine issues of material fact entitling him to judgment as a matter of law. Like his First Amendment claim, Plaintiff failed to even state a valid claim for malicious prosecution. Plaintiff fails to allege any specific facts or offer any evidence to support such a claim. Plaintiff has not identified what procedural or substantive due process is lacking in the case that led to his arrest, nor does he ever detail how the process afforded him in the present one is in anyway deficient. And Plaintiff does not address the fact, admitted in his deposition, that the bench warrant that led to his arrest was

---

[19] *See* docket no. 211-3.

perfectly valid, issued by a sitting judge, following his failure to appear in court to address the valid citation issued to his employee driver, due to the vehicle owned by Plaintiff being out of compliance with the rules and regulations of the Salt Lake Airport. As such, he is not entitled to summary judgment on this claim.

Furthermore, this court concludes that Officer Steggall is entitled to qualified immunity. Once an individually named defendant invokes the affirmative defense of qualified immunity, the plaintiff must satisfy a two-part test. *See Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000). As part of this "heavy two-part burden," the plaintiff must first establish the defendant's acts or omissions violated a constitutional or statutory right. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). To satisfy the second part of this burden, the plaintiff must show the right at issue was clearly established at the time of the defendant's unlawful conduct. *See id.* "In assessing whether a right was clearly established, the court must look at the objective legal reasonableness at the time of the challenged action and ask if 'the right [was] sufficiently clear that a reasonable officer would understand that what he [was] doing violate[d] that right.'" *Boyett v. Washington County*, No. 2:04cv1173, 2006 WL 3422104 , at *14 (D. Utah Nov. 28, 2006) (*quoting Wilson v. Layne*, 526 U.S. 603, 615 (1999)). If Plaintiff fails to satisfy any part of that two-part inquiry, this court must grant qualified immunity to the individually named defendants in this case. *See Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that, if plaintiff fails either part of the two part qualified immunity test, no further analysis is required).

As Plaintiff has admitted, Officer Steggall was not involved in issuing the bench warrant pursuant to which Plaintiff was arrested. Thus, even assuming that Plaintiff had alleged a plausible First Amendment claim for retaliatory government action based on his constitutionally

protected speech, Officer Steggall could not be liable on that claim. *See, e.g.*, *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[P]ersonal participation is an essential allegation in a §1983 claim."); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) ("The plaintiff must show the defendant personally participated in the alleged violation, and conclusory allegations are not sufficient to state a constitutional violation." (internal citation omitted)). Furthermore, Officer Steggall had no affirmative obligation to investigate whether the warrant was valid. *See Baker v. McCollan*, 443 U.S. 137, 145-146 (1979) ("Given the requirements that arrest be made only on probable cause . . . we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence."). Therefore, Officer Steggall's role in briefly detaining Plaintiff pursuant to an arrest by another agency, based on an outstanding bench warrant, did not violate a constitutional or statutory right of Plaintiff. *See Albright*, 51 F.3d at 1531. As such, Officer Steggall is entitled to qualified immunity on Plaintiff's claim of denial of due process and his First Amendment rights.

### **Fourth Amendment Claim**

Plaintiff asserts that County Defendants violated his Fourth Amendment rights against unreasonable search and seizure by subjecting him to a pat-down and strip-down search. County Defendants contend that Officer Steggall was authorized to conduct a routine "pat down" or "rub" search on Plaintiff in order to protect the jail, other inmates, officers, and others from the risk that Plaintiff might be concealing weapons or contraband while he was in the jail booking area.

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78,

11

89 (1987), superseded by statute on other grounds. Courts consider the following factors in determining whether a regulation is reasonably related to legitimate penological interests:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002). The Tenth Circuit has held that pat down searches do not violate the constitution. *See, e.g.*, *Chapman v. Nichols*, 989 F.2d 393, 397 (10th Cir. 1993) ("[J]ails can meet the minimal security concerns they may have with minor offenders by means of a less intrusive pat-down search" (quotations and citation omitted)). However, due to the nature of the intrusion involved, courts have held that strip searches and/or body cavity searches are constitutionally suspect, absent evidence of weapons or contraband that could not otherwise be detected. *See id.*

All individuals who are booked into the ADC are subjected to a pat down or rub search, which is defined as "an officer's pat of the prisoner's body over the clothing in an attempt to locate contraband, with incidental contact with the genital, anal, and female breast areas. A complete rub search includes a more thorough, or intrusive search of the genital, anal, and female breast areas. Shoes and socks will be removed as part of a complete rub search."[20] Rub searches are documented by a Prisoner Management System while more intrusive searches are documents on a Property Form or the Strip Search Log.[21] ADC policy permits visual or digital cavity

---

[20] Docket no. 211, Exhibit 7.

[21] *See id.*

searches when there is reasonable suspicion to believe an arrestee is concealing a weapon, drugs or contraband that could be concealed in that manner. Such searches must be authorized by a supervisor and digital strip searches must be conducted by medical staff.

Officer Steggall's pat down search of Plaintiff was constitutionally permissible. However, had Plaintiff actually been subjected to a "strip search" or a "body cavity search" during his four-hour detention, County Defendants concede that might have been unconstitutional. However, there is simply no credible evidence that Plaintiff was subjected to a strip search or body cavity search by any ADC employee. County Defendants contend that they have produced all of the records related to Plaintiff and there is simply no record supporting Plaintiff's allegations. The only evidence comes in the form of Plaintiff's self-serving affidavit and deposition. When Plaintiff initially complained about his treatment at the ADC, he never mentioned a strip search. Rather, Plaintiff did not allege that he had been strip searched until nearly four years after his detention, when he filed this lawsuit. Courts have repeatedly held that a plaintiff's own self-serving allegations are insufficient, without more, to create a genuine issue of material fact. *See Salguero v. City of Clovis*, 366 F.3d 1168 (10th Cir. 2004); *Murray*, 45 F.3d at 1422 ("To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" (*quoting Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991) (emphasis added)). That is especially so where, as here, record evidence contradicts those self-serving allegations. *See Scott*, 550 U.S. at 380-81 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could

believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Because Plaintiff's belated allegations of a "strip search" or "cavity search" are so dubious, no reasonable juror could believe them. Absent those allegations, Plaintiff's Fourth Amendment claim boils down to his legally insupportable objection to a routine "pat down" or "rub" search. Because such a search does not violate inmates' constitutional rights as a matter of law, Plaintiff is not entitled to summary judgment and Officer Steggall is entitled to qualified immunity on this claim. *See Chapman*, 989 F.2d at 397.

### **Eighth Amendment**

Plaintiff appears to be attempting to raise a claim of cruel and unusual punishment by either excessive force or deliberate indifference to his medical needs. As to any claim of excessive force, "[t]hree constitutional amendments protect against excessive force: the Eighth Amendment, the Fourteenth Amendment, and the Fourth Amendment." *Estate of Redd v. Love*, No. 2:11-cv-00478-RJS, 2015 WL 8665348, *8 (D. Utah Dec. 11, 2015). A claim of cruel and unusual punishment under the Eighth Amendment is only available to convicted prisoners, not pre-trial detainees. *See id.* Pre-trial detainees are individuals "who have been charged with a crime but who have not yet been tried on the charge." *Bell v. Wolfish*, 441 U.S. 520, 523 (1979). Thus, to the extent that Plaintiff's third cause of action is based on an excessive force claim under the Eighth Amendment, it should be dismissed as it is merely a restatement of his other claims.

Plaintiff's claims for deliberate indifference for failure to provide him food during his four hour detention also fail as a matter of law. To prevail on his claim for deliberate

indifference, Plaintiff must demonstrate that County Defendants were "deliberate[ly] indifferen[t] to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "'Deliberate indifference' involves both an objective and a subjective component. The objective component is met if the deprivation is 'sufficiently serious.'. . . The subjective component is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994)). The subjective component requires "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Farmer*, 511 U.S. at 838. It is not enough to allege that prison officials failed "to alleviate a significant risk that [they] should have perceived but did not." *Id.* at 838; *see Estelle*, 429 U.S. at 105-06 ("[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'"). Instead, to show "the requisite deliberate indifference," a plaintiff must show "the official [was] both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

There is no evidence that County Defendants were deliberately indifferent to Plaintiff's serious medical need. Plaintiff's life was never in danger as a result of being denied food for his diabetes or from any other circumstance. Plaintiff testified that his doctor likes his blood sugar level to be between 100 and 115; yet even at its lowest, his blood sugar only dropped to 97. Plaintiff testified that his doctor said there was no reason for Plaintiff to come see him as he would be fine, and Plaintiff admitted no doctor ever advised that Plaintiff's life was ever in danger.

Based on these undisputed facts, it cannot reasonably be argued that Plaintiff suffered any harm, let alone harm that was "sufficiently serious" to implicate the Cruel and Unusual Punishment Clause.  *See Farmer*, 511 U.S. at 834.  Thus, there can be no plausible argument that Officer Steggall (or any other County employee) "[knew] of and disregard[ed] an excessive risk to inmate health or safety.'"  *Sealock*, 218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 837).  Because Plaintiff has failed to establish a constitutional violation, Plaintiff is not entitled to judgment as a matter of law and Officer Stegall is entitled to qualified immunity in connection with Plaintiff's Eighth Amendment claim.

### Substantive Due Process

Plaintiff's "substantive due process" claim is also deficient as a matter of law.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Because Plaintiff's claims can be tied to specific constitutional provisions as detailed above, his substantive due process claim is redundant and unnecessary.

### "Pendant" Causes of Action

Plaintiff's only remaining causes of action are claims for "*Respondent Superior*" and violations of several provisions of the Utah Constitution.  These are "pendant" causes of action brought under state law and should be dismissed because Plaintiff failed to file a notice of claim under the Governmental Immunity Act of Utah ("GIAU") prior to filing this case.  The GIAU requires that, prior to bringing suit against a governmental entity or governmental employee, a

plaintiff must file a notice of claim with that governmental entity within one year of the date that his claim arises. *See* Utah Code § 63G-7-402. "Proper filing of the notice of claim is a jurisdictional requirement to filing suit." *Roberts v. Bradshaw*, No. 2:04-cv-1113 DAK, 2006 WL 722226, *5 (D. Utah Mar. 22, 2006).

There is no evidence that Plaintiff filed a timely notice of claim under the GIAU. Accordingly, Plaintiff's "pendant" causes of action are barred by the GIAU and should be dismissed.

**County Defendants' Liability**

Because Plaintiff has failed to demonstrate that Count Defendants violated any of his constitutional rights, all claims against Salt Lake County must be dismissed. A municipality can never be held "liable [for constitutional violations] when there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). As set forth above, because there was no constitutional violation by Officer Steggall or any other officer or employee of Salt Lake County, the County, as a matter of law, is not liable. Even if a constitutional violation had been established, municipal governments incur liability under 42 U.S.C. § 1983 only when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Services*, 436 U.S. 658, 694 (1978); *see also City of Springfield v. Kibbe*, 480 U.S. 257, 267 (1987) ("The Court repeatedly has stressed the need to find a direct causal connection between municipal conduct and the constitutional deprivation."). Moreover, where the identified policy—if any—is constitutional on its face, "considerably more proof than [a] single incident will be necessary . . . to establish

both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." *Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985) (footnotes omitted).  Here, there is no evidence of any policy, practice, or custom of the County that negatively affected the care and treatment Plaintiff received, let alone that any such policy, practice, or custom was directly causally connected to an alleged constitutional violation.

Based on the foregoing, this court concludes that there is no evidence on which any reasonable juror could conclude that County Defendants (1) denied Plaintiff due process or violated his First Amendment rights by briefly detaining him following his arrest by another agency on an outstanding bench warrant; (2) violated Plaintiff's Fourth Amendment rights by subjecting him to a routine "pat down" search during booking (or that he was subjected to a strip or body cavity search); or (3) violated the Eighth Amendment's prohibitions on cruel and unusual punishment by failing to provide Plaintiff with food during his four-hour detention at the ADC.  In addition, there is no evidence that the County maintained constitutionally defective policies, practices, or customs causally linked to any alleged constitutional violation.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that Plaintiff's motion for partial summary judgment[22] be **DENIED** and County Defendants' motion for summary judgment[23] be **GRANTED**.  Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The parties must file any objection to this Report and Recommendation within fourteen

---

[22] *See* docket no. 140.

[23] *See* docket no. 209.

(14) days after being served with a copy of it. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Failure to object may constitute waiver of objections upon subsequent review.

DATED this 7th day of September, 2016.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge